First of all, I want to thank you for your service under the Criminal Justice Act. The Court always appreciates that. You're welcome, Your Honor. Thank you. Of course, sir. You may proceed. Well, may it please the Court, Mr. Sigler. Of course, I took this case because I live ten miles from the St. Louis Arch, and I could just drive over for oral argument. It was perfect. Oh, you're not from here. You had to travel here? Collinsville, Illinois. Okay. Oh, that's all right. Good to be here. Sorry for the inconvenience. Well, but that's actually, it's not just a humorous story. It's part of the narrative. This is a 2255 ineffective assistance case, and the District Court dismissed without a hearing. And my client, Mr. Frausto, asked the District Court for a Certificate of Appealability, and the District Court, of course, assuming it did right, denied it. And this Court granted it. Granted Certificate of Appealability. And so I had to figure out why, and I had no idea first looking at this guilty plea record. I figured it out. And it looks like it was the right thing to do. The only question before this Court, no question of whether there's 2255 relief available, the question is whether the District Court erred in denying a hearing. That's it. Because Section 2255B starts with the words, unless the motion files records conclusively, conclusively, show that the prisoner is entitled to no relief, the Court shall grant a prompt hearing. And that's what we're here about. That's all we're here about. This is an advice of counsel case. Claims of wrong advice, claims of failure to advise. I first want to confess that in my reply brief, I misled the court. Fine, I do that in almost every case. Well, I found it in this one. It's on page four, the first page of my argument in my reply brief, where I say, Mr. Frausto does not claim that his attorney was ineffective for failing to obtain expert analysis and voice spectrography. Well, yes, he does. I overlooked that because I was interested in the other part of his argument, the part where he also said that his attorney failed to advise him that voice spectrography and expert analysis was available. To get relief there, wouldn't he have to have proffered some evidence that the results of an analysis like that showed that it was not his voice? Your Honor, that's exactly why I mentioned that. That's why my misleading of the court is relevant. If his claim, well, he makes both claims. He makes the claim that his lawyer should have gotten expert help. He makes the claim that his lawyer didn't tell him that it was available. Now, as to the first, as to the failure to get expert help, he can't bring that here. He couldn't bring that there in the district court. I mean, you're right. Why couldn't he have attached an expert's opinion? He could have. Or something like that. He could have, Your Honor. He could have. And because he did not, he's lost that claim. Okay. But he also, he goes on to claim that his lawyer didn't even tell him it was available. It's a two-part claim. Right. But he's got to show prejudice, right? Right. But he pleaded guilty. Okay. So he's got to show that it's less likely that he would have pled guilty. And in the absence of a report that says it's not his voice, why would he be less, especially when Rigoberto says it was his voice, why would he be less likely to plead guilty? And, of course, Rigoberto is no expert. Well. And wasn't claimed to have heard the conversation. Now, if he said, yeah, I heard him talking on the phone. That was my uncle. That would be different. But that's not what he's saying. He's basically a lay expert. I mean, a lay witness. He's no expert. Well, but you had the DEA agent, Wernley or whatever his name is, and you had the cell phone information. That's what the district court relied on, as well as the sentencing testimony, which is kind of after the fact. But why is that not enough here to show that the lawyer wasn't ineffective, there was no prejudice, either side of the coin? Well, Your Honor, the question is whether there's a reasonable probability that had he been properly advised, my client would not have pleaded guilty, would have insisted on trial. So the question is, the first question is how was he advised or how was he misadvised or not advised? That's the first step to find that out. And I did not know this coming in, but the cases of this circuit teach us that in an advice of counsel case, about the first thing you've got to do is find out what was said. It's an unusual kind of case. I think that whoever wrote this motion for my client was kind of a savant because he realized an advice of counsel case was the way to go. That's the kind of case that you've got to put together. Now, I question my client's tactics, filing a motion like this, question where it's going, but as a matter of alleging that he was misadvised, this makes sense. He's saying, I wasn't told. He's saying, I was mistold. But even assuming that, I mean, the way I'm looking at this, let's assume that that step is conceded and we simply assume, except for purposes of argument, that the appellant was advised exactly as he alleges. Whatever that allegation is, we're going to accept that. Which I think the court must. The second part is, so what? You've got to show that he was prejudiced. And without offering some proof of what the voice analysis would show, we don't know and no one can say that it would have made any difference, particularly in light of the fact that we've got other evidence that the district court referred to. So it's this prejudice aspect that, to me, is where we should be focusing. And that's why I wish I hadn't written what I wrote on page four of my reply brief. The results, if any, of an expert examination would be relevant if the claim was that counsel was ineffective for failing to get expert analysis. Absolutely. But if the claim is, and we have both, if the claim is failure to advise or misadvice, that changes it. Then the question is whether, if he wasn't misadvised, if he wasn't unadvised, there's a reasonable probability that he would have not pleaded guilty and gone to trial. Now it doesn't matter what the test is. Are you saying it doesn't matter that he would have been convicted anyway? The only question is whether he would have not pled guilty? Absolutely. And the district court made that mistake. The outcome would not have been different. But even if that's true, why is it less likely that he would have pled guilty merely by knowing that this analysis exists when we don't know what the outcome of that analysis is? For purposes, for this court's purposes, for sake of argument, which is all we get, there's no witnesses here, the court must assume. I don't think it's enough that he just asserts that he would not have pled guilty. I think he's got to put forth some facts from which we could logically conclude that it's less likely he would have pled guilty. If it wasn't an advice case, he'd have to come up with something else. Advice cases are peculiar. Advice cases, you've got to... This court's got to assume that if he was properly advised that he would not have pleaded guilty because inherent in his claim is that he was innocent. Wait a minute. What case says we have to assume that? Well, I've got it in... I'll have it when I get back up. I'll have the name of it. Because I thought Tran v. Lockhart said the opposite. Well, when I get back up, I'll have the name of the case. Because I think it's in my brief. If I don't, I won't. But basically, this is a case where what my client is alleging is that his counsel told him, the jury is going to believe that the drug car is yours, the voice on the recordings is yours, and your nephew cannot testify at your trial. Now, for purposes of this appeal, you should assume that my client isn't guilty. Well, given that I think it's undisputed that he was seen in the, what is it, a Ford Focus? Yes. Seen in that car? Not in it, but near it. Well, I thought he was seen in it. I don't believe he was in it. He was following it. He was in a Yukon. He drove a Yukon. Followed the Focus in traffic. All right. Well, what's the materiality of the ownership, given his connection somehow with it in any event? He claims that his counsel told him, well, and by the way, the Focus had a drug compartment, secret compartment. And four pounds of methamphetamine were found next to the Focus when his co-defendants were arrested. Mr. Frostow claims that his lawyer told him the jury is going to believe the car was yours, that car, the voice on the recordings was yours, and your nephew can't testify for you at trial. And so I pleaded guilty, even though I'm not guilty. I mean, there's nothing wrong with that advice. I mean, that's just a lawyer saying this is the likely outcome. You know, lawyers are always estimating, guesstimating what a jury will do. And so I'm saying what's the problem? What's the problem with a lawyer saying that? Well, but my client is saying that now I know that the car, that there was evidence that the car belonged to somebody else. Now I know that my nephew could have testified for me. Somebody wasn't even around. And what difference does it make who owned it? It's who's using it. Who's, you know, if it's part of the drug trade, it'll make a difference who owns it. Could it be stolen? Could it be borrowed? Could it be leased? Good question, Your Honor. But the answer is that my client alleges that his lawyer convinced him to plead guilty, in part by telling him the jury's going to believe that car is yours. That's in his 2255. Jury's going to believe that car is yours. That's what makes it relevant. The claim of ineffective assistance by the appellate counsel, that's not before us, correct? No. No, it's cumulative and, as far as I can see, worthless. I'd like to save a little time for rebuttal. I'd have to look for a case. That's fine. Thank you. Thank you. Your Honor, Mr. Stegler. Thank you, Your Honor. May it please the Court and Mr. Blood. Let me start with Judge Grunder's first question about the voice spectrographic analysis issue and whether or not he's required to offer some evidence of the test result. I don't think I cited this case in my brief. I think Mr. Blood did. But this Court's case of Rodella Aguilar v. the United States, 596, Fed 3rd, the way I read it, and I'm quoting, a claim of ineffectiveness based on a failure to consult and call an expert requires evidence of what a scientific expert would have stated at trial. And so I think the answer to your question is yes, you've got to make some showing or how can you evaluate the strict and prejudiced standard. The second thing I'd say about the voice issue, again, this case comes after the submission of the government's brief. This Court's case in Thomas v. the United States just this last December, 737, Fed 3rd, 1202, authored by Judge Shepard, the issue in that case was the defendant alleged in his 2255 that his lawyer did not discuss with him the question of raising a speedy trial motion prior to the beginning of trial. The allegation was that it would have been a good motion and so forth, but he says that his lawyer never talked to him. Well, the reason I bring this case up is because of the language in Thomas that talks about, you know, you're not required to discuss with your client every conceivable strategic-slash-tactical issue that you could raise in a case. And the Thomas Court said that the fact of the matter is that he wasn't required to discuss that with him. So whether he discussed it with him, even if the allegation by the defendant that it was not discussed with him, the speedy trial issue, wasn't discussed, it didn't make any difference because it was the kind of tactical decision that you're not required to. And the reason I bring that case up in conclusion on this issue of the spectrographic analysis, you know, really what I was thinking about this last night, I thought, well, what's a good way to present this? If you get into a situation where a defendant who pleads guilty and then later on thinks about his case and the situation he's in and he says that he doesn't like the result and he starts looking at the possible experts that there could have been at a trial in his case, you're going through the looking glass. Every dope case, well, why didn't my lawyer discuss with me having a different forensic chemist test the dope? Identification case, why didn't my lawyer discuss with me the vagaries of eyewitness identification? And you can take any case and find where an expert might have been called by somebody, but to lay the burden on a defendant's lawyer to discuss every conceivable expert in every conceivable case is a burden I don't think this court or any other court wants to impose on defense counsel. And I think that's what the Thomas case was saying when it said that you don't have to discuss all these issues. So, again, on the spectrographic analysis, I think there has to be a showing of what the test result would have been so that you can evaluate Strickland prejudice. And the second thing I say about it is that it's the kind of tactical decision that's left to counsel and he's not required to discuss it with his client. Well, what is the focus here? Is the focus on assuming the allegations that the effect on his guilty plea or the effect on if he had not given a guilty plea, do we look beyond that to whether for prejudice to whether he would have been convicted or not? Or do we only look at the prejudice that may affect him by whether or not he would have pled guilty? I'm not sure I'm getting your question. Mr. Blood, go ahead. I think what he's saying is in part is, well, if he'd have been told these things by his lawyer, he would not have pled guilty. That's what he's saying in his petition, yes. You don't look beyond that. You just say, well, that was enough right there to show prejudice because he wouldn't have pled guilty. No. And yet the court, district court goes on and says, well, wait a minute, he would have, all this evidence tied him to the transaction anyway about identifying his voice and so forth. Well, your cases say that our standard of review for this kind of an issue is abuse of discretion, but they also say that to evaluate abuse of discretion you have to look behind what the court did in denying the evidentiary petition at the specific allegations that he's making to see whether or not the files, records, the motion files and records of the case conclusively establish that it's, that his allegations are contradicted by the record or they're incredible or conjectural. And so that's what I think we're doing here. And that's why when I address the spectrographic analysis issue, you have to look beyond the abuse of discretion thing and say, well, all right, assuming it's true that his lawyer did not discuss it with him, so what? To evaluate. But I think the question is, is the so what whether he would have pled guilty or whether he would have been convicted or some combination of those two. Well, he says in his petition he wouldn't have pled guilty, but I think. Well, what's the legal requirement, though, for prejudice in a guilty plea situation I think is the question. Well, the probability of would there have been a different result? This is not a trial case. Different. But the result, the difference there, we're trying to find out, is the result that we're looking at that would be different a trial, a finding of guilty, or is the thing that would be different is that he would have not pled guilty? And that's all the farther we look. Well, Mr. If I'm tracking at all, Mr. Blood in his brief, in his reply brief, says that the government doesn't produce a case of where you're looking at a denial of a hearing on a 2255 on a guilty plea. He says all my cases are trial cases. Well, there are cases aplenty where it is a guilty plea situation, and I wrote one of them down. Now, if I can just find it. It's right here somewhere. Well, I would think one of the arguments is just a practical matter. If the court made it the guilty plea, then every person that pled guilty could have a second bite of the apple by coming back later and saying, hmm, you know, if my lawyer would have told me this or not told me that. That's exactly the situation you're confronted with. And then you're attacking the plea itself. Right. And, for instance, on the I didn't know my nephew, or he told me my nephew couldn't testify for me, which is the third issue here besides the car. And, by the way, before I forget, that car had nothing to do with anything. And the question is correct. The ownership of the car doesn't matter at all. He arrived at the Denny's restaurant the day he got arrested with his two co-conspirators, his nephew and the other fellow, in that car. He was in it or he was following it? No, they all went together. He was in the Ford Focus? Yeah, when they went to the Denny's restaurant. And then the other two left to go deliver the four pounds of dough. Was he driving or just a passenger? I don't know if the record reveals that at all. Well, on the Rigoberto testimony, we know Rigoberto subsequently said that his uncle didn't have anything to do with or didn't know about the dope. If that testimony could have come in, why wouldn't that have made it less likely that he would have pled guilty? Well, you keep asking me the question about less likely. I think the fact of the matter is that he would not have called his nephew to testify. He pled guilty a week after his nephew pled guilty. He was sentenced nine months after his nephew was sentenced, a year after his plea. And he did nothing in any of that time to suggest that he wanted to call his nephew to the stand. The nephew's case was overdone. He had gotten his 15 years. That could be because his lawyer told him that he couldn't testify. But when his nephew is there on the stand at the sentencing hearing, and if you look at the record in this case, the motion for a writ of habeas corpus on testificandum was issued by his lawyer, Mr. Manzan, in February, five months before the sentencing hearing, four months before the sentencing hearing. I think it's a fair inference that he knew his nephew was going to come at the sentencing hearing and try to exonerate him of the four pounds on the day of the arrest, which he never did admit. So he knew that his nephew was going to testify at the sentencing hearing. And the fact of the matter is that when his nephew, as you wrote in the original appeal, when his nephew identified his voice on the phone calls setting up the first one-pound deal, why would you call your nephew to basically help the government's case? I think that's incredible, frankly. Well, you know, if the rule is that all the appellant has to say, all the petitioner has to say, is that if my attorney had talked about this particular type of evidence, then I wouldn't have pled guilty. If that's all it takes, then the petitioner wins every time because we would just go on his subjective after-the-fact statement. But it's my understanding that the subject of that failure to advise, of that misrepresentation of that evidence that the petitioner contends his attorney did not broach with him, has to be favorable. And if the case were tried, it would have been favorable evidence. And to me, that's what's lacking here on the voice analysis. We don't know whether it would have been favorable, and therefore there's no prejudice. I agree with everything you just said. That's what I was trying to articulate when I said you look behind at the specific issues that he raises about the things that he wasn't told or was mistold and ask the question, does it make any difference? Or, as I inevitably said a few minutes ago, so what?  That's the issue with who owns the car. There's no probability that that would have changed anything. So there's no Strickland prejudice there. And as far as the nephew's testifying, as I just said, and as this court said in his initial appeal, he identified his uncle as the one setting up the very first deal. And if you look at all the phone calls after that deal went down in Cedar Rapids and then to Omaha, the phone calls contained calls after that deal, before Antonio Frausto came to Omaha on January the 18th, where the conversation between the CI and this defendant is, were you satisfied with the product? How much more would you like? And so he set up the second deal, too, because in those phone calls he says, I'm not coming to Omaha unless I know what I'm coming to sell. Who has the burden of proof? I'm not that familiar with the procedures of these things, but I think what they're saying is they should have had a hearing. But does the petitioner have the burden of proof, number one, and does he have the burden of proof to come forward with enough evidence for the district court to say, well, we need to have a hearing? What is the rule or procedures that you follow? Well, Mr. Blood articulated that at the very outset. In this kind of he said, he said kind of deal, if you look at the motion, the files, and the records of the case and they show that the burden of proof is on him to show that there's some legitimate issue here that rises to the level of strict prejudice that's not contradicted by the files and records of the case and that is something that would have made a difference, that he was prejudiced thereby. And so the burden, if I get your question, is on the defendant to show that. Well, that's my point. You know, to say, well, we should have had a hearing so we could flesh this out, that I could prove these things, is the procedure that the petitioner has to come up with some allegations or an affidavit or something ahead of time to prove enough to get the hearing? Well, in this particular case, I think it's proper to take his assertions as true, that he was never talked with Mr. Monson about spectrographic analysis and that Mr. Monson said something about the car. I think we are, but the question is whether it was prejudiced. To show whether it was prejudiced, again, does he have to come forward with some proof, evidence, or at least some reasonable allegations that he was prejudiced? Well, I think he has to come forward with a reasonable, what's the word I'm looking for, not evidence necessarily, but a reasonable conclusion that he would have, that there would have been a different result, that there would have been the probability that he would not have pled. And I don't think he can do that in this case because the substance of his three assertions, car, voice analysis, and nephew testifying are all belied by the files and records of the case. So to send this back, I think I just don't see where there would be any different result because I think it's clear from what you have available in front of you right now that there would not be a different result. Thank you. Thank you, Mr. Sigler. How much time does Mr. Blood have? Three minutes and four seconds. Okay. Thanks again, Your Honor. It's just a hearing. We're not here about whether he gets 2255 relief. It's just a hearing. We're having a hearing today. They should have had a hearing there. That's all we're saying. As far as burden of proof, should he come up with an affidavit? He has to. He did. It's attached to his 2255. It's in our appendix. His affidavit, his nephew's affidavit. Did you find the case where prejudice is presumed? No, but I will cite it. I made a note of that. No, I didn't. I should have put that in my brief. I agree. Hindsight's 20-20, Your Honor. Probable outcome at trial is irrelevant. Probable outcome at trial is irrelevant. Why is it irrelevant? Section 2255B states, unless the motion and files and records conclusively show that the prisoner is entitled to no relief, the court shall grant a prompt hearing thereon. Well, here it conclusively shows that because there's no showing of prejudice. And, Your Honor, you caught me at the end. Our Supreme Court says, a defendant satisfies the prejudice prong required to establish an ineffective assistance under Strickland by establishing a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. That's Hill v. Lockhart out of this circuit. Supreme Court. Yeah, and it goes on to say, this assessment in turn will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial. That's it. Always gratifying when the court's ready for oral argument, Your Honor. This court obviously knows this case. I would say, in response to that, that if this court relies on cases other than guilty plea slash advice of counsel cases, this court is going to be misled. That those are a peculiar type of cases. That, yes, the threshold for what must be alleged and sworn to in those cases is less. But. Well, Hill v. Lockhart was a guilty plea case. And it tells us that a defendant claiming that absent counsel's error he would have insisted on trial has to show that the evidence claim or subject of the misrepresentation would have likely proven beneficial to the defendant in a trial. Right, Your Honor. That's why that's the standard. He can't. He's not offered anything to show that this spectrograph evidence would have been favorable at a trial. It's still not part of the test, Your Honor. It's. What he has to prove is a reasonable probability that it would change his plea. And that is the test. It's just black and white. That's what our Supreme Court said. And that's what this court said in the Wilcox case in 2001. All we ask for is a hearing. Just a hearing. I was just looking at Hill v. Lockhart. I think that answers your question that you were going to get up and give us a case on, I think. I think Hill v. Lockhart answered that. Well, if I need to cite supplemental authority, Your Honor, I will. But if that's it, I won't. Well, if you have something different, you know, you're welcome to submit it. Thank you, Your Honor. Okay. Thank you. Thank you both. And we will take it under advisement and be back due course with an opinion. Thank you.